UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

GREEKTOWN HOLDINGS, LLC, *et al.*,                    United States District Court
                                                     Case No. 12-cv-12340
                              Debtors,               Judge Paul D. Borman
_____/

BUCHWALD CAPITAL ADVISORS, LLC,
solely in its capacity as Litigation Trustee for
the Greektown Litigation Trust,

                              Plaintiff,             Bankr. Case No. 08-53104
                                                     Chapter 11
v.                                                   Judge Walter Shapero

DIMITRIOS ("JIM") PAPAS, VIOLA PAPAS,               Adv. Pro. No. 10-05712
TED GATZAROS, MARIA GATZAROS,
BARDEN DEVELOPMENT, INC., LAC VIEUX
DESERT BAND OF LAKE SUPERIOR
CHIPPEWA INDIANS, SAULT STE. MARIE
TRIBE OF CHIPPEWA INDIANS, KEWADIN
CASINOS GAMING AUTHORITY, and
BARDEN NEVADA GAMING, LLC,

                              Defendants.
_____/

OPINION AND ORDER GRANTING CORRECTED MOTION FOR ORDER APPROVING
SETTLEMENT AGREEMENT BETWEEN BUCHWALD CAPITAL ADVISORS LLC, IN ITS
CAPACITY AS THE LITIGATION TRUSTEE AND DISTRIBUTION TRUSTEE, AND
SAULT STE. MARIE TRIBE OF THE CHIPPEWA INDIANS AND KEWADIN GAMING
AUTHORITY (BANKR. DKT. NO. 3359)

        This matter is before the Court on the parties' stipulation to withdraw the reference in the

above-captioned Adversary Proceeding with respect to the Plaintiff's Corrected Motion for Order

Approving Settlement Agreement Between Buchwald Capital Advisors, LLC, in its Capacity as the

Litigation Trustee and Distribution Trustee, and Defendants Sault Ste. Marie Tribe of the Chippewa

1

Indians and Kewadin Gaming Authority. (Bankr. Dkt. No. 3359.) The parties filed briefs in this Court in opposition to and in support of the Corrected Motion. (Dist. Ct. Dkt. Nos. 6, 7, 8.) The Court heard oral argument on June 27, 2012. For the reasons that follow, the Court GRANTS the Corrected Motion and APPROVES the Settlement Agreement.

**INTRODUCTION**

On April 13, 2012, Buchwald Capital Advisors LLC, in its capacity as the Litigation Trustee of the Greektown Litigation Trust (the "Litigation Trustee") and in its capacity as the Trustee of the Greektown General Unsecured Creditors Distribution Fund Trust (the "Distribution Trustee"), collectively the "Trustees," filed a Corrected Motion for Order Approving Settlement Agreement Between Buchwald Capital Advisors, LLC, In Its Capacity as the Litigation Trustee and Distribution Trustee, and Sault Ste. Marie Tribe of the Chippewa Indians (the "Tribe") and Kewadin Casinos Gaming Authority ("Kewadin") in this Adversary Proceeding in the United States Bankruptcy Court for the Eastern District of Michigan. (*In re Greektown Holdings*, *LLC, et al.*, Bankr. Case No. 08-53104, Adv. Pro. No. 10-05712, Bankr. Dkt. No. 3359, the "Settlement Motion".) On May 23, 2012, Defendants Dimitrios Papas and Viola Papas (the "Papas") and Ted Gatzaros and Maria Gatzaros (the "Gatzaros") (collectively the "Papas and Gatzaros Defendants") filed an Objection to the Settlement Motion. (Bankr. Dkt. No. 3417.)

On May 30, 2012, the Papas and Gatzaros Defendants filed a motion in this Court for Withdrawal of the Reference with respect to the Settlement Motion.[1] (Dist. Ct. Dkt. No. 1.) On

---

[1] On November 18, 2012, this Court entered an Order denying without prejudice the Papas and Gatzaros Defendants' earlier motion to withdraw the reference with respect to the entire adversary proceeding involving the claims filed against them in the Greektown Bankruptcy matter. (Dist. Ct. No. 10-12628, Dkt. No. 21, Order Denying Defendants' Motion to Withdraw Reference Without Prejudice as to Bankr. Ct. Adv. Pro. No. 10-05712.)

June 5, 2012, the Trustees and the Sault Ste. Marie Tribe of the Chippewa Indians (the "Tribe") and Kewadin Casinos Gaming Authority ("Kewadin") (hereinafter collectively "the Tribe Defendants" or the "Settling Defendants") and the Papas and Gatzaros Defendants stipulated to withdrawing the reference with respect to the Settlement Motion. (Dist. Ct. Dkt. No. 4, Stipulation to Entry of Order Withdrawing Reference.) On June 6, 2012, this Court entered an Order withdrawing the reference with respect to the Settlement Motion, setting forth a briefing schedule regarding the Papas and Gatzaros Defendants' opposition to the Settlement Motion and setting a June 27, 2012 hearing date to consider the merits of the Settlement Motion. (Dist. Ct. Dkt. No. 5.)

On June 14, 2012, the Papas and Gatzaros Defendants filed a Response Brief in Opposition to the Tribe Settlement Motion. (Dist. Ct. Dkt. No. 6.) On June 21, 2012, the Tribe Defendants and the Trustees filed separate briefs in support of the Settlement Motion. (Dist. Ct. Dkt. Nos. 7 and 8.) For the reasons that follow, the Court DENIES the Papas and Gatzaros Defendants' Objections to the Settlement Motion, GRANTS the Settlement Motion, and APPROVES the Settlement Agreement, which is fair, reasonable and adequate under Fed. Bankr. R. 9019.

## I.    BACKGROUND

On May 29, 2008, Greektown Holdings, LLC and certain affiliates (collectively the "Debtors"), commenced proceedings under Chapter 11 of the United States Bankruptcy Code, *In re: Greektown Holdings, LLC*, *et al., Debtors* (E. D. Mich. Bankr. No. 08-53104). On or about May 28, 2010, this Adversary Proceeding was commenced, *The Official Committee of Unsecured Creditors on Behalf of the Estate of Greektown Holdings, LLC*[2] *v. Dimitrios ("Jim") Papas, Viola*

---

[2] By Stipulation dated August 9, 2012 (and approved by Consent Order dated August 14, 2010) the Defendants agreed that Buchwald Capital Advisors LLC ("Buchwald"), in its capacity as the Litigation Trustee of the Greektown Litigation Trust and in its capacity as the Trustee of the

*Papas, Ted Gatzaros, Maria Gatzaros, Barden Development, Inc., Lac Vieux Desert Band of Lake Superior Chippewa Indians, Sault Ste. Marie Tribe of Chippewa Indians, Kewadin Casinos Gaming Authority, and Barden Nevada Gaming, LLC*, (E.D. Mich. Bankr. Adv. Pro. No. 10-05712).  The Complaint in this Adversary Proceeding alleges that the Defendants received fraudulent transfers from the Debtors which may be avoided under section 544 of the Bankruptcy Code and under the Michigan Uniform Fraudulent Transfers Act ("MUFTA") (Mich. Comp. Laws § 566.32, *et seq*.). The Complaint alleges that $177 million was fraudulently transferred by the debtor, Greektown Holdings, LLC ("Holdings"), to the Defendants, payments for which the Defendants provided no or inadequate consideration.  (Adv. Pro. No. 10-05712, Dkt. No. 1, Complaint; Dist. Ct. Dkt. No. 8, Trustees' Br. 4-5.)    Of the $177 million in transfers, the Settling Defendants received approximately $6 million.  The Papas Defendants received approximately $90 million and the Gatzaros Defendants received approximately $55 million.  The Barden Defendants received approximately $21 million and the Lac Vieux Defendants received approximately $5 million.[3]

Originally, the Committee sought to recover from the Settling Defendants the entirety of the amount allegedly fraudulently transferred by the Debtors to the Papas and Gatzaros Defendants, based on the Trustees belief that the Settling Defendants had guaranteed certain obligations to the Papas and Gatzaros Defendants and that, therefore, the transfers to the Papas and Gatzaros Defendants were for the benefit of the Settling Defendants by reducing their exposure on the guarantees.  However, after discussions with the Settling Defendants and review of "hundreds of

---

Greektown General Unsecured Creditors Distribution Fund Trust , replace the Official Committee of Unsecured Creditors of Greektown Holdings, LLC (the "Committee") as Plaintiff in this Adversary Proceedings.  (Bankr. Dkt. No. 3359, p. 3 ¶ 8.)

[3]  The Barden Defendants and Lac Vieux have settled with the Trustees.

pages of documents," the Trustees have abandoned this theory of recovery, having concluded that they would be unlikely to prove an indirect benefit to the Settling Defendants.  (Dist. Ct. Dkt. No. 8, Trustees Br. 5-6.)  Accordingly, the Trustees concluded that their claims against the Settling Defendants would be limited to a maximum of $6 million, the amount directly transferred to them. Based upon this analysis and conclusion, the Trustees entered into a proposed settlement with the Tribe Defendants in the amount of $2.75 million, approximately 50% of the direct transfer claim, and in addition secured the withdrawal of the Settling Defendants' $2.6 million claim against the Distribution Trust and the Settling Defendants' agreement to cooperate with discovery against the non-settling Defendants.  (Dist. Ct. Dkt. No. 1, Ex. A, Ex. 2, Settlement Agreement) (the "Settlement Agreement").

The Papas and Gatzaros Defendants now object to the proposed Settlement Agreement, principally because the Agreement contains a Claims Bar Order that the Papas and Gatzaros Defendants assert would compromise future claims that they may have against the Settling Defendants.  The Papas and Gatzaros Defendants also object to the provision of the Settlement Agreement requiring the Settling Defendants to cooperate only with the Trustees and assert that the Settling Defendants have waived sovereign immunity as to any further claims against them related to or arising out of the MUFTA Adversary Proceeding.

## II.    STANDARD OF REVIEW

This Court has the authority to approve the proposed Settlement Agreement pursuant to Bankruptcy Rule 9019(a), which provides: "On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *In re Dow Corning Corp.*, 192 B.R. 415, 421 (E.D. Mich. 1996).  "'Compromises are a normal part of the process of reorganization.  In

5

administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.' And, of course, the law favors compromise." *Id.* (quoting *Protective Comm. for Independent Stockholders of TMT Ferry Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). "The very purpose of such a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *In re Bard*, 49 F. App'x 528, 530 (6th Cir. 2002) (internal quotation marks and citation omitted). "Whether the compromise is effected separately or in the body of a reorganization plan will not affect the approval analysis required of the bankruptcy court." *In re Dow Corning*, 192 B.R. at 421.

> In assessing the "wisdom" of a proposed compromise, the Court considers:
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re Bard*, 49 F. App'x at 530.

Generally, non-creditors who have no interest in the proposed settlement have no standing to challenge the fairness of proposed compromise. *In re Huggins*, 460 B.R. 714, 718 (E.D. Tenn. 2011) (non-creditor who was not a party in interest had no standing to object to settlement agreement). However, where a proposed settlement agreement affects the legal rights of third parties, their interests must be considered. *See Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983) ("In making the reasonableness determination the court is under the mandatory duty to consider the fairness of the decree to those affected.").

## III.    ANALYSIS

"Non-settling defendants in a multiple defendant litigation context have no standing to object

6

to the fairness or adequacy of a settlement by other defendants, but they may object to any terms that preclude them from seeking indemnification from the settling defendants.  Non-settling defendants also have standing to object if they can show some formal legal prejudice to them, apart from the loss of contribution and indemnity."  Herbert B. Newberg & Alba Conte, 2 *Newberg on Class Actions* § 11.55 (3d ed. 1992).  The Papas and Gatzaros Defendants do not object to the fairness or adequacy of the Settlement Agreement, nor could they.  The Papas and Gatzaros Defendants are not creditors of the bankruptcy estate and generally, as non-interested parties, would have no standing to object to the Settlement Agreement.

They claim, however, that the "Claims Bar Order" provision of the Settlement Agreement impermissibly forecloses certain future legal claims that they may have against the Settling Defendants, specifically they assert that they are wrongfully precluded from seeking indemnification and/or contribution from the Settling Defendants. They also object to the provision of the Settlement Agreement that obligates the Settling Defendants to cooperate with the Trustees, but not with them, in the continued prosecution of the claims against the non-settling Defendants.  Finally, the Papas and Gatzaros Defendants argue that the limited waiver of sovereign immunity that the Tribe Defendants have conceded for purposes of entering into and effectuating the terms of the Settlement Agreement should extend to "all remaining parties in the litigation" and should not be limited to the Trustees.

### A.    The Claims Bar Order

"When [] a settlement agreement contains a bar order extinguishing possible legal claims of non-settling defendants, the court must conduct an evidentiary fairness hearing to determine whether

the settling defendants are paying their fair share of the liability." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 484 (6th Cir. 2001). "'If the proposed settlement is intended to preclude further litigation by absent persons, due process requires that their interest be adequately represented.'" *Id.* at 484-85 (quoting *Kovacs v. Ernst & Young (In re Jiffy Lube Sec. Litig.)*, 927 F.2d 155, 158 (4th Cir. 1991)).

Paragraph 6 of the Settlement Agreement states that the Settlement is conditioned upon and subject to the entry by the Bankruptcy Court of a bar order, which reads:

> IT IS FURTHER ORDERED that all persons and entities are hereby permanently BARRED, ENJOINED and RESTRAINED from commencing, prosecuting, or asserting any claim against the Tribe Defendants, including claims for indemnity or contribution, arising out of or reasonably flowing from the facts or allegations or claims in this MUFTA Adversary Proceeding, whether arising under state, federal or foreign law as claims, cross-claims, counterclaims, or third-party claims, in this MUFTA Adversary Proceeding Action, in any federal or state court, or in any other court, arbitration proceeding, administrative agency, or other forum in the United States or elsewhere (collectively, the "Barred Claims"). These Barred Claims include, but are not limited to, any and all claims arising out of or reasonably flowing from the transfers which are the subject of this MUFTA Adversary Proceeding.

(Dist. Ct. Dkt. No. 1, Ex. A, Ex. 2, p. 6 ¶ 6.)

The Papas and Gatzaros Defendants first argue that because the Tribe negotiated a carve-out in the settlement of the Trustees claims against the Barden Defendants, that the Papas and Gatzaros Defendants are entitled to a carve-out in the Settlement Agreement between the Trustees and the Tribe Defendants. The Papas and Gatzaros Defendants next argue that the Tribe Defendants have failed to proffer an adequate financial reason for insisting on the Claims Bar Order. Finally, the Papas and Gatzaros Defendants assert that the "all-encompassing and expansive Claims Bar [] effectively [means] that the Papas and Gatzaros Defendants' potential non-bankruptcy claims against the Tribe will be eradicated without their consent, agreement, mutual acceptance, or any

8

consideration." (Dist. Ct. Dkt. No. 6, 1.) They identify the following potential claims against the Settling Defendants: (1) common law indemnity; (2) contribution; (3) fraud; and (4) deepening insolvency.[4]

The Trustees and the Settling Defendants respond that the facts surrounding the Barden settlement distinguished the need for a carve-out in that settlement. The Trustees and the Settling Defendants further respond with sworn testimony supporting the claim that the Tribe faces real financial impediments in seeking to renegotiate its significant debt burden with the specter of litigation relating to this MUFTA proceeding hanging over their heads. The Trustees and the Settling Defendants argue that the Papas and Gatzaros Defendants cannot establish a cognizable claim against the Settling Defendants on any of their proffered theories and that, even if they could, such claims would be barred by sovereign immunity and applicable statutes of limitation. The Trustees and the Settling Defendants therefore assert that this Court need not conduct an evidentiary hearing to determine whether the Settling Defendants are "paying their fare share" of any such liability because there is no possible legal basis for such liability. Accordingly, the Trustees ask the Court to grant their motion and to approve the Settlement Agreement.

1.      **The Barden Settlement "carve out" was negotiated based on circumstances not presented by the Settlement Agreement between the Trustees and the Tribe Defendants.**

The Papas and Gatzaros Defendants assert that because the Tribe successfully objected to

---

[4] It is significant to note that the Papas and Gatzaros Defendants have never filed any cross-claims in this Adversary Proceeding against the Settling Defendants. The Papas and Gatzaros' earlier-filed motion for summary judgment (Bankr. Dkt. No. 187), argued that the transfers to all of the Defendants are insulated from challenge by the Michigan Gaming Control Board's ("MGCB") approval of the transfers. There is no hint or suggestion in that motion that the Papas and Gatzaros Defendants had potential claims against any of the other Defendants. Nor is there any such assertion in the Papas and Gatzaros Defendants' Answer to the Trustees' Complaint.

the settlement agreement between the Trustees and the Barden Defendants, and obtained a carve-out in regard to that agreement preserving the Tribe's right to assert a contribution claim against the Barden Defendants, the Tribe should be "judicially estopped" from "changing position" and objecting to the Papas and Gatzaros Defendants' request for a similar carve out with regard to the instant Settlement Agreement.  The doctrine of judicial estoppel forbids a party from "taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding."  *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988).

The Papas and Gatzaros Defendants have failed to articulate how the Settling Defendants' earlier insistence on a carve out in relation to the Barden settlement is inconsistent with their support of the Claims Bar Order in the instant settlement.  The Papas and Gatzaros Defendants simply do not face the same potential for liability that the Tribe faced in this MUFTA Adversary Proceeding with regard to the Barden settlement.  At the time of the Barden settlement, the Trustees continued to pursue their theory that the Tribe Defendants, although they did not receive a penny of the $21 million transferred to the Barden Defendants, could potentially be liable for that amount on an indirect benefit theory.  Thus, because the Tribe Defendants were faced with the potential of being held liable for $21 million that admittedly they never received, they sought to protect their right to recover that amount should they later be found liable on an indirect benefit theory.

By contrast, the Trustees are not seeking, and have never sought, to hold the Papas and Gatzaros Defendants indirectly liable for the $6 million transferred to the Tribe Defendants.  The Trustees seek to recover from the Papas and Gatzaros Defendants only the $145 million in direct transfers that they actually received.    Parallels could perhaps be drawn to the Barden carve out if the Trustees were proposing to settle with the Papas and Gatzaros Defendants, and the indirect benefit

10

theory against the Tribe Defendants was still in play.  Then the Tribe Defendants would be in the same position they were in the Barden settlement - facing potential liability for amounts that they never received - and the same equitable considerations regarding a carve out for the Tribe arguably may be applicable.  But the instant Settlement Agreement between the Trustees and the Tribe Defendants presents no such inequity or entitlement because the Trustees have never asserted the indirect benefit theory against the Papas and Gatzaros Defendants or sought to hold the Papas and Gatzaros Defendants liable for any transfers but their own. There simply is no logic to the Papas and Gatzaros Defendants' argument that "they only want what the Tribe got when they settled with Barden."  There is no similar justification and no basis for comparison. Even if the indirect benefit theory were still in play (which it will not be if the Settlement Agreement is approved), it would not entitle the Papas and Gatzaros Defendants, who are being pursued by the Trustees only for amounts that they actually received, to any type of "carve out."

> **2.** **The Settling Defendants need not demonstrate a financial justification for the Claims Bar Order but, in any event, they have proffered unrebutted testimony that financial institutions have declined to extend the Tribe financing because of the pendency of the fraudulent transfer claims at the heart of this Adversary Proceeding.**

The Papas and Gatzaros Defendants cite no legal authority for their suggestion that the Settling Defendants must justify their negotiated Claims Bar Order with a financial need.  In any event, the Settling Defendants have offered cogent reasons, and sworn testimony in support, for their assertion that the Claims Bar Order is necessary to enable them to renegotiate their debt obligations, a large portion of which come due in November, 2012.  Victor Matson, Jr., the Tribe's Chief Financial Officer, testified at this Court's hearing on June 27, 2012, and was subject to cross-examination.  He also filed a sworn affidavit as to his conversations over the past four years with

11

various financial institutions with regard to financing the Tribe's operations and efforts to place the Tribe's revolving debt.  (Dist. Ct. Dkt. No. 7, Ex. 1, May 25, 2012  Declaration of Victor Matson, Jr. ¶ 3.)[5]  Mr. Matson testified that in each case where he has discussed potential financing arrangements, the Tribe has been rebuffed due to the fraudulent transfer claims pending against it in the Greektown Bankruptcy proceedings.  *Id.* ¶¶ 4-8.  Mr. Matson testified that the release of all claims against the Settling Defendants is necessary in order for the Tribe to obtain financing from potential lenders.  *Id.* ¶ 9.

The Papas and Gatzaros Defendants have offered no testimony or evidence to rebut the testimony of Mr. Matson.  On cross-examination, counsel for the Papas and Gatzaros Defendants inquired of Mr. Matson whether he had ever tried to assuage the financial institution's fears regarding the Tribe's legal liabilities in this Adversary Proceeding by offering Releases signed by Papas and Gatzaros Defendants in December, 2005, in connection with the transfers they received, in which they broadly released the Tribe and other parties from any future claims.  Mr. Matson explained that he had not presented the releases to the financial institutions because discussions with them "never got that far."  In any event, the Papas and Gatzaros Defendants have offered nothing but a suggestion that the Releases may have been sufficient to persuade the financial institutions that the Tribe would be free from further financial exposure regarding the claims in this Adversary Proceeding, a suggestion that strains credulity in the present economic climate and in any event is supported by nothing but conjecture.  Indeed, the very fact that the Papas and Gatzaros Defendants are seeking now to enforce their rights to assert claims against the Settling Defendants in the future

---

[5]  Thus, at the hearing on this matter, the Tribe Defendants proffered Mr. Matson's Declarations through Mr. Matson's live testimony, and offered Mr. Matson for cross-examination on the subject matter of the Declarations.  (Transcript of June 27, 2012 Hr'g 21:11-22:2.)

is solid evidence that the Releases could not have the calming effect on financial institutions that the Papas and Gatzaros Defendants suggest.

>   **3.**   **The Papas and Gatzaros Defendants have failed to establish that the Claims Bar Order extinguishes any viable potential legal claims that they purport to have against the Settling Defendants.**

Only if the Court concludes that the Papas and Gatzaros Defendants have potential viable claims against the Settling Defendants that are barred by the Claims Bar Order is the Court obligated to conduct a fairness hearing to determine whether the Settling Defendants are paying their proportionate share of any such potential liability.  The Papas and Gatzaros Defendants identify the following potential claims against the Settling Defendants: (1) common law indemnity; (2) contribution; (3) fraud; and (4) deepening insolvency.

>   **a.**   **Common Law Indemnity**

The Papas and Gatzaros Defendants argue that if a jury were to find that the transfers at issue in this Adversary Proceeding that were made to the Papas and Gatzaros Defendants "were entirely 'for the benefit of the Tribe,' as Plaintiff alleges, and the Papas and Gatzaros Defendants are found liable under a constructive fraud theory, then the Tribe would be vicariously liable to the Papas and Gatzaros Defendants under a common law indemnity theory."  (Dist. Ct. Dkt. No. 6, Papas and Gatzaros Resp. 12.)  The Court concludes that the Papas and Gatzaros Defendants have identified no viable common law indemnity claim against the Tribe Defendants.

First, although the Trustees originally sought to recover the entire $145 million in direct transfers to the Papas and Gatzaros Defendants from the Settling Defendants on the theory that the Settling Defendants were indirect beneficiaries of the $145 million in transfers made to the Papas and Gatzaros Defendants, the Trustees have determined that they likely cannot establish  a claim of

13

indirect benefit against the Settling Defendants. This conclusion by the Trustees informed their decision to agree to settle the claims against the Settling Defendants for $2.75 million, based solely upon the direct transfers made to them, which amounted to $6 million. Thus, the Trustees do not intend to press this theory following approval of the Settlement Agreement.

Second, the Papas and Gatzaros Defendants do not occupy the position of a potential indemnitee vis-a-vis the Settling Defendants and have no claim for indemnification against them. Under Michigan law a claim for indemnity may be either contractual (express or implied) or based on common law. *Fishbach-Natkin, Inc. v. Shimizu America Corp.*, 854 F. Supp. 1294, 1300 (E.D. Mich. 1994). "[O]nly a party who can plead and prove freedom from active fault is entitled to be indemnified under a common law or implied contract theory." *Id.* at 1301. "[I]n determining whether a party seeking common law indemnification is itself free from active negligence, a court must review the underlying complaint against that party as well as the complaint which seeks indemnity." *Id.* As a general rule, if the underlying complaint alleges that the party seeking indemnity is directly liable by virtue of its own conduct, that party will have no right to indemnity. *Id.* However, the Court must look beyond the complaint to "*all of the evidence*" to determine whether the party claiming indemnity was guilty of active fault. *Id.* (emphasis in original).

The allegations in this MUFTA Adversary Proceeding are against the Papas and Gatzaros Defendants directly for the $145 million in transfers that they undisputedly received, without regard to the $6 million in transfers also directly received by the Settling Defendants. There is no allegation in this Adversary Proceeding that the Papas and Gatzaros Defendants are without fault and somehow only vicariously liable for the transfers made to the Settling Defendants. If anything, the Trustees originally sought to hold the Settling Defendants indirectly liable for the transfers made to other

14

defendants. But even this claim was not based on principles of vicarious liability, which has no application to the instant claims.

The Papas and Gatzaros Defendants allege that they have a potential common law indemnity claim against the Settling Defendants that would arise if a fact-finder were to conclude that the Settling Defendants had indirectly benefitted from the transfers that were made to the Papas and Gatzaros Defendants. Putting aside the fact that Trustees have conceded the weakness of such a claim and that no such indirect benefit claim will be asserted by the Trustees in the event of a settlement with the Tribe Defendants, the Papas and Gatzaros Defendants' indemnity claim fails for the fundamental fact that the indirect benefit theory of liability earlier lodged against the Settling Defendants, seeking to hold them liable for $145 million in transfers that admittedly they never received, does not convert the Trustees direct liability claim against the Papas and Gatzaros Defendants, based upon their direct receipt of $145 million in allegedly fraudulent transfers, into a vicarious liability claim. Vicarious liability, and therefore claims of common law indemnification, have no application here. The Papas and Gatzaros Defendants have not identified any set of facts under which the Settling Defendants would be liable to them on a theory of vicarious liability. Vicarious liability presumes the innocence of the party seeking indemnification. Here, there is no dispute that the Papas and Gatzaros Defendants directly received $145 million in allegedly fraudulent transfers. Even if the Trustees original indirect benefit theory were still in play (which it is not), that theory sought to hold the Settling Defendants indirectly liable for the Papas and Gatzaros Defendants' fraudulent conduct - not the other way around.

### b.    Contribution

As an initial matter, it is important to note that the concept of contribution only enters the

discussion in the context of joint tortfeasors.   The Papas and Gatzaros Defendants continue to suppose that the Trustee will rely on the now-discredited "indirect benefit" theory, under which the Committee originally sought in the Complaint to recover "the full $155 million from the Tribe as purported joint tortfeasors and/or under an indemnity theory."  (Dist. Ct. Dkt. No. 6, 3.)  If the Settlement Agreement is approved, the Trustees will no longer be pressing their indirect benefit/joint tortfeasor theory. The allegedly fraudulent transfers in this MUFTA Adversary Proceeding are directly traceable to the individuals who received them.  There is no "common injury" in which the Papas and the Gatzaros Defendants share.  Under the applicable statutory contribution provisions "common liability exists in situations in which multiple tortfeasors are liable for the same injury to a person or property . . . Common liability exists in such cases because multiple tortfeasors are alleged to be responsible for an accident which produce[d] a single indivisible injury." *Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 472 Mich. 44, 56 (2005).

Assuming *arguendo* that their may be a basis for joint tortfeasor liability, the Papas and Gatzaros Defendants appear to concede that there is no common law claim to contribution and that any claim must be based on a statutorily created right to contribution.  Although the Papas and Gatzaros Defendants argue that New York law should apply, the Court need not address the choice of law issue as a similar result would obtain in the end whether the Court applied New York or Michigan law.[6]

Under both New York and Michigan law, the Settlement Agreement between the Trustees and the Settling Defendants relieves the Settling Defendants from any claim for contribution from

---

[6] The Court notes that the Trustees assert that the Papas and Gatzaros Defendants are not parties to any of the agreements which they claim call for the application of New York law. The Papas and Gatzaros Defendants have not responded to this assertion.

the non-Settling Defendants.  *See* N.Y. Gen. Oblig. § 15-108(b); Mich. Comp. Laws § 600.2925d. The Papas and Gatzaros Defendants largely concede this but claim that under New York law, the amount of the settlement reached by a joint tortfeasor, or the equitable share of that settling tortfeasor's liability, whichever is greater, must be deducted from any ultimate judgment rendered against the non-settling defendant.  (Dist. Ct. Dkt. No. 6, 15.)  The Papas and Gatzaros Defendants argue that the "right to set-off called for [under the New York contribution statute] is intended to avoid a result in which the nonsettling tortfeasors bear more than their equitable share of the plaintiff's damages."  *Id*.

Under the current Michigan statutory scheme, the release granted by the Trustees in the Settlement Agreement discharges the Settling Defendants from all liability for contribution to any other person.  Mich. Comp. Laws § 600.2925d provides:

> If a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons for the same injury or the same wrongful death, both of the following apply:
>
> (a) The release or covenant does not discharge 1 or more of the other persons from liability for the injury or wrongful death unless its terms so provide.
>
> (b) The release or covenant discharges the person to whom it is given from all liability for contribution to any other person for the injury or wrongful death.

Mich. Comp. Laws § 600.2925d.  There is no suggestion that the Settlement Agreement was not negotiated in good faith and thus this provision of Michigan law discharges the Settling Defendants from any claim for contribution from the Papas and Gatzaros Defendants.  Under the Michigan comparative fault scheme, the Papas and Gatzaros Defendants relief from any inequity imposed by operation of this subsection lies in Mich. Comp. Laws § 600.6304, which permits the trier of fact to apportion fault among multiple tortfeasors, including those who have been released from liability

17

under section 600.2925d and are not parties to the action.

Under the reformed legislative scheme, set-off rights have been replaced by the statutory directive that, in the case of joint tortfeasors, the trier of fact must allocate liability in direct proportion to each individual tortfeasor's percentage of fault. *See* Mich. Comp. Laws § 600.2957(1). The current version of § 600.2925d, which shields a settling defendant from claims for contribution, does not provide for *pro tanto* claim reduction because, as Michigan courts have held, the rationale for set-offs no longer applies under a system of several liability: "There would be no need for a setoff because the tortfeasor-defendant not involved in the settlement would necessarily be responsible for an amount of damages distinct from the settling defendant on the basis of allocation of fault." *Markley v. Oak Health Care Investors of Coldwater, Inc.*, 255 Mich. App. 245, 255 (2003). *See also Wrobbel v. Int'l Brotherhood of Electrical Workers*, No. 07-10110, 2010 WL 940279, at *5 (E.D. Mich. March 12, 2010) (holding that under Michigan's reformed tort-liability scheme, the defendant Union was not entitled to a set-off for a settlement received by plaintiff and holding that Michigan's allocation of fault scheme would permit the trier of fact to allocate fault regardless of whether all tortfeasors were parties to the proceeding).

The Court concludes that the Papas and Gatzaros Defendants and the Settling Defendants are not joint tortfeasors as they are not jointly liable for a common injury. They are individually liable for discrete transfers that each received, each of which is separately challenged. They have established no right to contribution under either Michigan or New York law. Even assuming they had a right to contribution under the Michigan statute, that right is released under Mich. Comp.

18

Laws § 600.2925d by virtue of the Settlement Agreement.[7]  Further, under the Michigan legislative scheme, the Papas and Gatzaros Defendants would be entitled to apportionment of liability by the trier of fact if the claims against them proceed to trial on a joint tortfeasor theory of liability.[8]  (Dist. Ct. Dkt. No. 7, 16.)

> **c.  Fraud**

The basis for the purported fraud claim is unclear.  It appears that the Papas and Gatzaros Defendants surmise that the Trustees might allege that the Tribe's projections given to the Michigan Gaming Control Board ("MGCB") back in 2005, which caused the MGCB to approve the transfers to the Papas and Gatzaros Defendants on December 2, 2005, were "overly optimistic or even misleading." The Papas and Gatzaros Defendants further surmise that if this claim were established against the Tribe,  it may also be likely that the Tribe misled the Papas and Gatzaros Defendants.  Putting aside the fact that the Trustees are proposing to settle with Tribe and release all claims

---

[7]  The Papas and Gatzaros Defendants suggest that under certain circumstances, Michigan courts have found Mich. Comp. Laws § 600.2925d to be inapplicable. (Dist. Ct. Dkt. No. 6, 16.) However, in both cases on which they rely the courts found that the defendants were not in fact joint tortfeasors and therefore the contribution statute did not apply at all.  In fact, those cases support this Court's conclusion that the Papas and Gatzaros Defendants have not established a basis for joint liability and the Michigan contribution statute does not apply.

[8]  The Settling Defendants also purport to rely on Releases signed by the Papas and Gatzaros Defendants in connection with the 2005 transfers.  (Dist. Ct. Dkt. No. 7, Tribe Resp. 8, Ex. B, June 20, 2012 Supplemental Affidavit of Victor Matson, Jr., Exs. A, B.)  The Papas and Gatzaros Defendants submit that these Releases are relevant, if at all, only as a defense to claims that may later be asserted by them against the Settling Defendants.  Because the Court concludes, on separate and independent grounds, that the Papas and Gatzaros Defendants have no viable claims (arising out of the MUFTA Adversary Proceeding) against the Settling Defendants, an interpretation of the scope of these Releases is unnecessary.  The Court notes, however, that the Papas and Gatzaros Defendants have urged the Settling Defendants to provide the Releases to the lending institutions as "proof" that the Tribe Defendants will never face claims from the Papas and Gatzaros Defendants, in lieu of insisting on the Claims Bar Order.  Certainly this fairly could be construed as a concession as to the validity of Releases.

against them, thus precluding any such future claim against the Tribe, the Papas and Gatzaros

Defendants fail to explain how they might separately have been "defrauded" by such projections.

They appear to allege that they may have been defrauded into *receiving* $145 million in transfers

from the Debtors, based upon overly optimistic projections which the Tribe provided to the MGCB.

It is difficult to see how these allegations could support a fraud claim under Michigan Law,

which requires proof of several elements that are lacking here:

> Under Michigan law, in order to succeed on a fraud claim, a plaintiff must show that
> (1) "the defendant made a material misrepresentation . . . (2) [that] was false;" (3)
> "when the defendant made the representation, [the defendant] knew that it was false,
> or . . . made [it] recklessly, without knowledge of its truth, and as a positive
> assertion;" (4) "the defendant made the representation that it should be acted upon
> by the plaintiff;" (5) plaintiff acted in reliance upon it; and (6) "[t]he plaintiff
> suffered injury due to his reliance on the representation."

*Future Now Enterprises, Inc. v. Foster*, __ F. Supp. 2d __, 2012 WL 917811, at *5 (E.D. Mich.

2012). The Papas and Gatzaros Defendants do not allege that any misrepresentations were made

to them - they allege that the Tribe misled the MGCB. Nor do they describe how they, as opposed

to the MGCB who approved the transfers, relied on these projections. Nor do they establish how

the payment to them of $145 million caused them injury.

Apart from any merits-based attack on such an alleged fraud claim, the Trustees and the

Settling Defendants argue that such a claim would be barred under Michigan law by the applicable

six-year statute of limitations. Absent a claim of fraudulent concealment (there is no such claim

asserted here), the statute of limitations for fraud claims is six years under Michigan law, and the

statute begins to run when the claim accrues. *Future Now Enterprises*, 2012 WL 917811, at *6. A

claim for fraud accrues when the allegedly fraudulent statement is made. *Id.* (citing *Boyle v.

General Motors Corp.*, 468 Mich. 226, 23032 (2003) (rejecting the proposition that a claim of fraud

20

only accrues when the fraud is or should have been discovered).  Any claim for fraud thus accrued sometime in 2005, when the projections were made and the Papas and Gatzaros Defendants allegedly believed that they were reasonable.  (Dist. Ct. Dkt. No. 6, 13.)  Any claim sounding in fraud based on the projections would be barred by the six-year statute of limitations.

### d.       Deepening Insolvency

The Papas and Gatzaros Defendants fail to explain how they would be proper parties to bring a claim against the Settling Defendants under this theory.  The doctrine of "deepening insolvency" recognizes that an action can be brought on behalf of the estate of a bankrupt debtor against an officer or director of the bankrupt corporation who fraudulently expanded corporate debt out of all proportion to the corporation's known ability to repay, prolonging corporate life and forcing insolvency.  *Official Committee of Unsecured Creditors v. Lafferty & Co.*, 267 F.3d 340, 348 (3d Cir. 2001).  Such a claim can be brought on behalf of the estate by the debtor, by a trustee, or in some circumstances by a creditors committee.  *Id*. The Papas and Gatzaros Defendants one-sentence claim that discovery "may reveal" such a claim does nothing to explain what the contours of the claim would be or how they would be proper parties to bring such a claim.

The Papas and Gatzaros Defendants have failed to establish that they could ever assert viable claims against the Settling Defendants on any of the legal theories they advance.  As discussed below, even if they could, such claims would be barred by the Settling Defendants' right to sovereign immunity.

21

**B.**     **Even Assuming the Papas and Gatzaros Defendants Could Identify Potential Claims That They Will be Precluded From Asserting by Operation of the Claims Bar Order, The Papas and Gatzaros Defendants Have Failed to Establish That the Settling Defendants Have Waived Sovereign Immunity as to Any Such Claims**

Paragraph 12 of the Settlement Agreement provides that the Tribe Defendants do not waive their right to assert the defense of Sovereign Immunity in any other proceeding, other than to effectuate the terms of the Settlement Agreement. *Id*. p. 8 ¶ 12.  In a one-paragraph statement, with no citation to legal authority, the Papas and Gatzaros Defendants, notably not parties to the Settlement Agreement, assert that this limited waiver executed by the Tribe Defendants in connection with the Settlement Agreement "should benefit all remaining parties in the litigation, including the Papas and Gatzaros Defendants . . . ."  (Dist. Ct. Dkt. No. 6, 20.)   The Papas and Gatzaros Defendants state that should they "need to enforce any provision of the Settlement Agreement [to which they are not a party], including any preserved claims against the Tribes [none of which are mentioned in the Agreement], or even to enforce discovery against the Tribes, the Papas and Gatzaros Defendants should be able to do so in the same manner and with the same immunity waivers afforded the Litigation Trustee." *Id*.  This novel suggestion finds no support in law or logic, and was not developed in the briefs or in the statements made by counsel for the Papas and Gatzaros Defendants at oral argument.

**1.**     **The Tribe Defendants have agreed to cooperate with the Papas and Gatzaros Defendants in discovery.**

To the extent that the Papas and Gatzaros Defendants feared that the Settling Defendants' assertion of sovereign immunity may have frustrated the Papas and Gatzaros Defendants' ability to obtain discovery from the Settling Defendants, this issue has been resolved by Settling Defendants' agreement to provide equivalent cooperation to both the Trustees and the Papas and Gatzaros

Defendants.  Paragraph 4 of the Settlement Agreement provides, in pertinent part, that the "Tribe Defendants shall cooperate with the Litigation Trustee's reasonable requests made in connection with the MUFTA Adversary Proceeding against the non-settling Defendants." (Dist. Ct. Dkt. No. 1, Mot. to Withdraw Reference, Ex. 2, Settlement Agreement p. 5 ¶ 4.)  At the hearing on this matter, counsel for the Settling Defendants, Grant Cowan, agreed that, if the Settlement Agreement is approved, the Tribe Defendants would be willing also to cooperate with the Papas and Gatzaros on discovery matters:

> Your Honor, the Papas and Gatzaros Defendants have, I believe, raised a legitimate concern regarding the cooperation provision in the settlement agreement.  To be clear, Your Honor, it is not the intent of the tribe Defendants to favor one party over any other party.  If the settlement is approved, the tribe is agreeable to providing the same level of access to the documents and witnesses  to the Papas and Gatzaros Defendants as it proposes to provide to the litigation trust.
>
> The tribe's overriding concern, Your Honor, with respect to this provision is, as you might expect, that such requests, whether they be from the litigation trust or from the Papas and Gatzaros Defendants, be reasonable and avoid unnecessary burden or expense on the tribe.  But the tribe is prepared to cooperate with both parties to that effect if it will result in a settlement.

(Transcript of June 27, 2012 Hearing, 51:13-52:2.)  Also at the hearing, Ms. Stone, counsel for the Papas and Gatzaros Defendants, acknowledged that this concession by the Tribe Defendants adequately addressed the Papas and Gatzaros' concern that they would be disadvantaged by the unequal access to discovery:

> Mr. Cowan has suggested that we somehow admit that they have sovereign immunity – that was a contortion of our argument.  We're simply saying that if they have sovereign immunity, then we want the same limited waiver of that that the tribe is – that the Plaintiff is going to enjoy based on the settlement agreement.  I was pleased to hear today that maybe that won't be an issue and that we  can possibly reach an agreement with the tribe on discovery similar to what they have with the Plaintiff.

(Transcript of June 27, 2012 Hearing, 66:21-67:-4.)

23

2.  **The Papas and Gatzaros Defendants have failed to establish that the Tribe Defendants have expressly waived sovereign immunity from any "preserved claims" that the Papas and Gatzaros purport to have against them.**

It is well established that "[a]s a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity. " *Kiowa Tribe of Oklahoma v. Mfg. Techs., Inc.*, 523 U.S. 751, 754 (1998). *In accord Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991) ("Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation."); *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917, 920-21 (6th Cir. 2009) ("So, unless Congress abrogates a tribe's immunity, or the tribe waives its immunity, the tribe's immunity remains intact.").

With regard to the instant Settlement Agreement, the Papas and Gatzaros Defendants do not argue that Congress has abrogated the Tribe Defendants' sovereign immunity from suit based upon their purported claims for contribution, indemnity, fraud or the like against the Settling Defendants. They instead imply that the Tribe Defendants have waived immunity to any future claims that the Papas and Gatzaros Defendants may have against the Tribe Defendants by virtue of the limited waiver contained in the Settlement Agreement with the Trustees, to which the Papas and Gatzaros Defendants are not a party. This invites the very prohibited implication of waiver clearly forbidden by established Supreme Court precedent. "'The Supreme Court has made it plain that waivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed.'" *Furry v. Miccosukee Tribe of Indians of Florida*, __F.3d__, 2012 WL 2478232, at *9 (11th Cir. 2012) (quoting *Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1285 (11th Cir. 2001)).

24

Thus, the Papas and Gatzaros Defendants must establish that the Tribe Defendants "expressly and unmistakably waived [their] right to immunity from suit." *Furry*, 2012 WL 2478232, at *9. There is no question that the limited waiver in the Settlement Agreement does not refer or relate to claims that the Papas and Gatzaros Defendants, admittedly not parties to the Settlement Agreement, may potentially assert at some later date against the Settling Defendants. In fact, it is because the limited waiver clearly does not cover the claims the Papas and Gatzaros Defendants may later seek to assert against the Settling Defendants that they now ask this Court to create a judicial waiver based on the admittedly equivocal language of a Settlement Agreement to which they are not a party. The Papas and Gatzaros Defendants offer not a shred of legal support for the proposition that this Court can construe the limited waiver in the Settlement Agreement between the Tribe Defendants and the Trustees as an "express and unmistakable" waiver by the Tribe Defendants from immunity to suit by the Papas and Gatzaros Defendants.

The Papas and Gatzaros Defendants have ignored, and failed to respond to, the Settling Defendants' argument that even if the Settling Defendants had asserted claims in this Adversary Proceeding, which they have not, an Indian Tribe must specifically waive its immunity with respect to a particular claim or action and does not waive its sovereign immunity as to other claims filed against it in a proceeding in which has granted a limited waiver to proceed. *See* Settling Defs.' Limited Resp., Dkt. No. 7, 7-9, relying on *United States v. United States Fidelity & Guaranty*, 309 U.S. 506 (1940); *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 498 U.S. 505, 509 (1991) (relying on *Fidelity & Guaranty* and recognizing that "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe," and concluding

25

that "[p]ossessing ... immunity from direct suit . . .[the Indian nations] possess a similar immunity from cross-suits.").

The Papas and Gatzaros Defendants do not deny that the Tribe Defendants' waiver is limited to the effectuation and enforcement of the Tribe's obligations under the Settlement Agreement. Inexplicably, and without legal support, they claim that the waiver should extend to them, non-parties to the Settlement Agreement, so that they may proceed with any claims they may have against the Settling Defendants. The Tribe Defendants have asserted no claims in this proceeding and have executed a limited waiver relating solely to the performance of their obligations under the Settlement Agreement with the Trustees. The Papas and Gatzaros Defendants, not parties to that Settlement Agreement, offer no legal support for their claim that this Court has the authority to impose a more extensive waiver on the Settling Defendants that would cover later-asserted claims by the Papas and Gatzaros Defendants.

The Papas and Gatzaros Defendants have utterly failed, either in their briefs or through oral argument, to support the suggestion that the Tribe Defendants would not be entitled to sovereign immunity against a claim by the Papas and/or Gatzaros for indemnity, contribution, fraud or deepening insolvency. The issue of whether the Tribe Defendants enjoy sovereign immunity from the fraudulent transfer claims brought in this Adversary Proceedings or whether Congress abrogated that immunity in section 106(a) of the Bankruptcy Code, 11 U.S.C. § 106(a), is a much different issue than whether the Tribe Defendants would be entitled to sovereign immunity from any of the claims that the Papas and Gatzaros Defendants purport to have against the Settling Defendants. The section 106(a) issue has been fully briefed and argued in the Bankruptcy Court and awaits a final ruling by the Court. Significantly, the Papas and Gatzaros Defendants did not file a substantive

26

opposition to the Tribe's motion to dismiss this Adversary Proceeding on the grounds of sovereign immunity. The Papas and Gatzaros Defendants filed a four page response to that motion stating that "applicable precedent as opposed to arguments from Papas and Gatzaros will guide the Court in determining whether sovereign immunity bars the claims asserted [against the Tribe Defendants." (Adv. Pro. Dkt. No. 57 ¶ 4.)

In short, the Papas and Gatzaros Defendants have never supported their suggestion that the Tribe Defendants have waived sovereign immunity against any claims that may one day be asserted against them by the Papas and Gatzaros Defendants. Indeed, as the Tribe Defendants point out, the Papas and Gatzaros Defendants' request that this Court judicially craft a waiver permitting such claims suggests that they concede the point. Absent evidence, and none has been presented, of a further waiver of immunity by the Tribe Defendants, the Papas and Gatzaros Defendants have failed to persuade the Court that they will be able to overcome the Tribe Defendants' entitlement to sovereign immunity in any future action against the Settling Defendants.

### C.    The Need for an Evidentiary Hearing

The Papas and Gatzaros Defendants have failed to clearly articulate any future claim that they may have against the Settling Defendants. They have no claim to indemnity and no claim to contribution under Michigan or New York law. They have failed to establish the contours of any possible fraud claim against the Settling Defendants, which in any event would be barred by the applicable statute of limitations, and offer no basis on which the Court could conclude that they are proper parties to bring a claim for "deepening insolvency," even if such a claim were recognized. They have failed to address or rebut the Settling Defendants' argument that, even assuming that the Papas and Gatzaros Defendants could define such a claim, the Settling Defendants would be entitled

27

to sovereign immunity on any such claim. Accordingly, the Court is not compelled to hold an evidentiary hearing to determine the fairness of the Settlement Agreement because the Claims Bar Order does not extinguish any possible legal claims that the Papas and Gatzaros Defendants may possess. *See McDannold*, 261 F.3d at 485 n.4 (noting that where a right to contribution does not exist on any theory, i.e. where the settling and non-settling parties are not liable "to the same person for the same harm," no apportionment is required and no hearing need be conducted).

### D.      The Fairness and Reasonableness of the Settlement Agreement

The Bankruptcy Court, and this Court where the parties have stipulated to withdraw the reference as to the motion to approve this Settlement Agreement, has the authority to decide the fairness and reasonableness, under Bankruptcy Rule 9019, of a settlement agreement that contains a claims bar order. *See, e.g. McDannold*, 261 F.3d at 484 (remanding to district court for analysis of fairness and adequacy of settlement agreement containing a bar order); *Matter of Munford, Inc.*, 97 F.3d 449, 454-55 (11th Cir. 1996) (finding that bankruptcy court had authority to review fairness and adequacy of settlement agreement and to decide on the fairness of proposed claim bar order).

Having concluded that the Claims Bar Order does not extinguish any potential legal claims of the Papas and Gatzaros Defendants, the Court need only find that the proposed Settlement Agreement is fair and reasonable. In assessing the "wisdom" of a proposed compromise, the Court considers:

> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

*In re Bard*, 49 F. App'x at 530.

The Trustees state in their brief, and supported these facts at the hearing on this matter through the testimony of Lee Buchwald, the founder of Buchwald Capital Advisors, that the Settlement Agreement is the result of protracted discussions with the Settling Defendants, arms length negotiations and examination of hundreds of documents.  (Dist. Ct. Dkt. No. 8, Trustees' Resp. 8.)  They maintain that if the matter with the Settling Defendants is not resolved now, the litigation will be lengthy and costly and will undoubtedly result in multiple appeals addressing issues not well settled in this Circuit.  *Id.*  The Trustees also concede that they face issues of sovereign immunity and the probability that they would be unable to establish their "indirect benefit" theory as to the Papas and Gatzaros transfers.  *Id.* at 6.  With regard to any potential difficulties in the matter of collection should the Settlement Agreement as proposed be rebuffed, the Affidavit of Victor Matson, Jr., the Chief Financial Officer of the Tribe, provided in support of the Settling Defendants' Limited Response to the Papas and Gatzaros Defendants' Objection to the Settlement Agreement, indicates that the continuation of this lawsuit is impairing the ability of the Tribe to place its debt and to seek financing to continue operations.  (Dist. Ct. Dkt. No. 7, Ex. 1, May 25, 2012 Affidavit of Victor Matson, Jr. ¶¶ 3-8.)

The Settlement Agreement represents a near 50% recovery on the $6 million dollar direct transfer claim that the Trustees have against the Settling Defendants.  The Trustees submit that this $2.75 million Settlement Agreement, which also provides for cooperation against the non-settling Defendants and for a release of the Settling Defendants' claims against the Estate, result falls well within the range of reasonableness contemplated by Rule 9019.  There is no dispute that the Papas and Gatzaros Defendants, as non-creditors, have no standing to object to the inherent fairness of this proposed Settlement Agreement as they are not parties to the Settlement Agreement.  Indeed, at oral

argument on the motion to approve the Settlement Agreement, counsel for the Papas and Gatzaros Defendants stated that: "We're not trying to step in front of their settlement. We don't have a issue. We haven't raised a substantive issue on the merits of the amount or things of that nature." (Tr. June 27, 2012 Hr'g 64:4-7.)

The Court concludes that the proposed Settlement Agreement is fair and reasonable. The Trustees have explained that, while they do not concede the point, they face difficult and likely protracted challenges from the Tribe Defendants based on sovereign immunity. The Trustees also concede that they have little chance of succeeding with their indirect benefit theory. The Trustees also point out that several of the issues, such as the issue of abrogation of sovereign immunity under section 106(a) of the Bankruptcy Code, are matters of first impression in the Sixth Circuit and thus would be hard fought. Finally, the Court notes that there are no objections to the fairness and reasonableness of the terms of the Settlement Agreement.

## IV.    CONCLUSION

The Court GRANTS the Corrected Motion to Approve the Proposed Settlement Agreement (Bankr. Dkt. No. 3359),  APPROVES the Settlement Agreement as fair and reasonable and ENTERS the Claims Bar Order.

IT IS SO ORDERED.


                                        S/Paul D. Borman
                                        PAUL D. BORMAN
                                        UNITED STATES DISTRICT JUDGE


Dated:  July 13, 2012

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on July 13, 2012.

S/Denise Goodine
Case Manager

31